# IN THE SUPERIOR COURT OF GUAM

EULALIA W. VALDEZ, n/k/a
EULALIA W. CORNIELLE,

        Plaintiff,

        vs.

PETERNILO L. VALDEZ,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

DOMESTIC CASE NO: DM0044-13

**DECISION AND ORDER RE: MOTION
TO ENFORCE DIVORCE AND
PROPERTY SETTLEMENT
AGREEMENT**

## Introduction

This matter is before the Honorable Jonathan R. Quan[1] upon Plaintiff Eulalia W. Valdez's ("Plaintiff") Motion to Enforce Divorce and Property Settlement Agreement. Plaintiff is represented by Attorney Daron J. Berman, Esq. Defendant Peternilo L. Valdez ("Defendant") is represented by Attorney Louie J. Yanza, Esq. The Court held a Continued Motion Hearing on June 16, 2020, via Zoom videoconference, after which the Court took the underlying Motion under advisement. All parties were present at the hearing. After reviewing the relevant filings and considering all arguments and testimony from the hearing, the Court now issues this DECISION and ORDER **DENYING** the Plaintiff's Motion to Enforce Divorce and Property Settlement Agreement.

## Background

This matter commenced upon Plaintiff filing a Complaint for Divorce on January 17, 2013. Compl. for Divorce (Jan. 17, 2013). The parties were married on January 5, 1995. *Id.* at 1. The

---

[1] This matter was originally in front of the Honorable Michael J. Bordallo. The matter was transferred to Judge Quan on February 25, 2020, via an Order Appointing Judge Pro Tempore.

Court issued a final decree of divorce on April 4, 2013. Final Decree of Divorce (Apr. 4, 2013). The Decree and related Interlocutory Judgment of Divorce addressed the distribution or the assets and the allocation of community debts between the parties. *See* Interlocutory Judgment of Divorce (Apr. 4, 2013). Relevant to the underlying Motion, the parties each had an interest in real property located in Barrigada Heights (the "Property"). *Id.* at 7. The Property had two mortgages against it, each from First Hawaiian Bank. *Id.* The initial Judgment ordered that Plaintiff would maintain her interest in the Property, and Defendant would have physical ownership over the Property. *Id.* The Judgment furthered ordered that within one year of the Decree, the parties agreed that Defendant shall buy out Plaintiff's interest in the Property. *Id.* Plaintiff was to receive 100% of the equity in the Property, with payment from the Defendant occurring in instalments over five years. *Id.*

On August 22, 2013, Plaintiff filed a Motion for Contempt and Enforcement of the Divorce Property Settlement Agreement. Mot. for Contempt and Enforcement (Aug. 22, 2013). In the Motion, Plaintiff alleged that Defendant failed to honor certain portions of the judgment of divorce, including Defendant's obligation to buy out Plaintiff's interest in the Property and turn over 100% of the equity. Decl. of Plaintiff (Aug. 22, 2013). The Court issued a Decision and Order on November 27, 2013, granting Plaintiff's Motion in part and ordering that Defendant show cause at a future hearing as to why he had not substantially complied with the divorce judgment. Decision and Order at 2 (Nov. 27, 2013).

The Court held an Order to Show Cause hearing on January 13, 2014, after which it issued another Decision and Order relative to Plaintiff's Motion for Contempt. Decision and Order (Jan. 22, 2014). The Court ordered that Defendant shall provide the Plaintiff with a full copy of a property appraisal for the Property, in preparation of the eventual equity turnover as provided in the divorce judgment. *Id.* at 4.

On August 8, 2014, the parties entered into a subsequent agreement (the "Agreement") relative to the Property. Mot. to Enforce Divorce and Property Settlement Agreement, Ex. B (Feb. 24, 2020). In the Agreement, the parties agreed that Plaintiff would have 100% vested interest in and 100% ownership of the Property. *Id.* Additionally, the Plaintiff would have full servicing

responsibility over the first mortgage on the Property, while Defendant would have full servicing responsibility over the second mortgage. *Id.* The Agreement stated that it would be valid until either both parties agree to refinance the property or both mortgages are paid off in full. *Id.*

On October 24, 2017, Plaintiff filed another Motion for Contempt and Enforcement. Mot. for Contempt and Enforcement (Oct. 24, 2017). In the Motion, Plaintiff referenced the Agreement, and claimed that while she had dutifully been paying down both principal and interest on the first mortgage on the Property, Defendant had not made any payments on the principal of the second mortgage for over three (3) years. *Id.* at 4. Plaintiff claimed that she had attempted to have Defendant sign over his interest in the Property via quit claim deed, yet Defendant refused. *Id.* The Court issued a decision and order on this motion. Decision and Order (Mar. 3, 2018). The Court acknowledged the existence of the 2014 Agreement in its decision, and stated that the Agreement was a mutually agreed-upon modification of the original divorce decree. *Id.* at 2. The Court, however, additionally held that Defendant could not be held in contempt for violating the Agreement at that time. Id. at 3-4. Nowhere in the Agreement did it require Defendant to pay down the principal of the mortgage. *Id.* at 4. Defendant had not missed a minimum payment on the second mortgage, thus Defendant was not willfully failing to comply with a previous Court order. *Id.*

On February 24, 2020, Plaintiff filed the present Motion to Enforce Divorce and Property Settlement Agreement. Mot. to Enforce (Feb. 24, 2020). In the Motion, Plaintiff argued that Defendant still had not fulfilled his obligation on the second mortgage. *Id.* at 2-4. Plaintiff asserted that the second mortgage had a maturity date of July 31, 2020, and that if Defendant did not pay the outstanding balloon payment of one hundred twenty-five thousand dollars ($125,000) by that date, Defendant would default on the mortgage and the Property would be in danger of foreclosure. *Id.* Nowhere in Plaintiff's Motion did Plaintiff contend that Defendant had missed any monthly payments on the second mortgage. *See id.* at 1-4.

Defendant filed an Opposition on March 23, 2020. Deft's Opp. to Plaintiff's Mot. to Enforce (Mar. 23, 2020). Defendant asserted that Plaintiff's Motion was improper on several

grounds. *See id.* First, Defendant asserted that the Judgment in this matter voided any purported subsequent agreement between the parties, and the Judgment on its face requires Defendant to buy out Plaintiff's interest in the Property. *Id.* at 1-3. Second, Defendant argues that the issue of paying off the second mortgage is not ripe for review, as the maturity date of July 31, 2020 has not passed. *Id.* at 3. Finally, Defendant questioned the validity of the 2014 Agreement, and asserted that the Court would need to hold an evidentiary hearing on whether the Agreement was a valid contract, and if so, what the terms of said contract are. *Id.* at 3-9.

Plaintiff filed a Reply to Defendant's Opposition on March 31, 2020. Reply to Deft's Opp. (Mar 31, 2020). In the Reply, Defendant provided documented communication with First Hawaiian Bank indicating that the second mortgage maturity date was July 31, 2020, and detailing the appropriate procedure to refinance the second mortgage if the outstanding balance could not be paid off by the maturity date. *Id.*, Ex. A.

The Court held oral arguments on the Motion on June 11, 2020, and continued arguments on June 17, 2020, at which all parties and counsel were present via Zoom video conference. After the conclusion of testimony and argument on the Motion, the Court took the Motion under advisement.

### Discussion

While this matter and the underlying Motion in front of the Court present complex fact specific issues, the question in front of the Court is a simple one: Is the 2014 Agreement between the parties an enforceable contract, and if so, is the Defendant currently in breach of the Agreement for his failure to pay the second mortgage in full?

Guam courts apply principles of contract interpretation to divorce decrees that incorporate settlement agreements. *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8. While there is an Interlocutory Judgment of divorce in this matter, the Judgment provides in paragraph 23 that the final settlement agreement can be modified if the modifications are "expressed in writing and signed by both parties." Interlocutory Judgment of Divorce at 12 (Apr. 4, 2013). The 2014 Agreement is in writing and signed by both parties, and directly addresses assets originally

disposed of through the original Judgment, specifically the Property. Mot. to Enforce, Ex. B. The Court has already held that the parties "mutually agreed" to modify the original settlement agreement and executed the subsequent Agreement on August 8, 2014. Decision and Order at 2 (Mar. 8, 2018). Thus, while the validity of the Agreement was never argued in front of the Court, the Court has already ruled on substantive motions where the Agreement was treated as a valid modification of the original settlement agreement.

The Court does not find the Defendant has breached the Agreement **at this point in time**. To establish a breach of contract, a plaintiff must prove (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 19; *see Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1101 (E.D.Cal.2010); *Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F.Supp.2d 140, 149 (D.N.J.2012), aff'd sub nom., *Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685 (3d Cir.2014); *Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F.Supp.2d 131, 141 (S.D.N.Y.2004); *Nat'l Fitness Ctr., Inc. v. Atlanta Fitness, Inc.*, 902 F.Supp.2d 1098, 1105 (E.D.Tenn.2012).

At question is whether the third element - whether Defendant has breached the Agreement - is met. As Plaintiff alludes to in her Motion, Guam follows the traditional approach of contract interpretation. *Wasson v. Berg*, 2007 Guam 16 ¶ 16. Under this approach, courts look to the four corners of a contractual agreement to determine "whether, as a matter of law, any ambiguity exists." *Id.* ¶ 11. If no ambiguity exists, courts will not consider extrinsic evidence in determining the intent of the contracting parties. *Id.*

Reading the plain language of the Agreement, it states that Defendant shall have the servicing responsibility of the second mortgage on the Property, and that the Agreement will be valid until both parties agree to refinance the mortgages or when both mortgages are paid off in full. Nowhere in the Agreement does it order Defendant to pay more than the minimum monthly payment on the second mortgage. The Court reached the same conclusion in its previous decision and order on Plaintiff's Motion for Contempt. Decision and Order (Mar. 8, 2018).

It is undisputed that second mortgage will not mature until July 31, 2020.

It is further undisputed that Defendant has not missed a payment on the second mortgage, despite not paying down the principal of the second mortgage.

The Court, at this time, cannot hold Defendant in breach in its decision.

On August 1, 2020, if the balloon payment has not been paid in full, or if the second mortgage has not been refinanced by the parties, then the matter of whether the Defendant is in violation of the Agreement can be decided.

That, however, is not the case as of the date of issuance of this decision. The Court agrees with Defendant that, **at this point in time**, Plaintiff's Motion based on Defendant's alleged breach of the Agreement is not ripe for review. Therefore, because Plaintiff's Motion is premature as of this date, the Court hereby **DENIES** the Motion to Enforce Divorce and Property Settlement Agreement.

## Conclusion

Based on the foregoing reasons, the Court hereby **DENIES** Plaintiff's Motion to Enforce Divorce and Property Settlement Agreement.

SO ORDERED this ___*17th*___ day of July, 2020.

_____
HONORABLE JONATHAN R. QUAN
JUDGE PRO TEMPORE, SUPERIOR COURT OF GUAM